### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MARIA G. ESTRADA, on her own behalf and on behalf of all other persons similarly situated known and unknown, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 07 C 6364 |
| PIT BOSS RIB HOUSE, INC., and PHIL TSIOUKANARAS, individually, | ) ) ) ) | Judge Zagel |
| Defendants. | ) | |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR AN ORDER TO AUTHORIZE NOTICE TO SIMILARLY SITUATED PERSONS PURSUANT TO 29 U.S.C. § 216(b)

## I.    INTRODUCTION

This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA" or the "Act"), for Defendants' failure to pay Plaintiff and other similarly-situated persons overtime pay for all time worked over forty (40) hours in individual work weeks. Plaintiff now seeks to issue notice of this collective overtime action to similarly-situated current and former employees of Defendants' restaurant business pursuant to §216(b) of the Act.

For the reasons further explained below, Plaintiff requests that the Court enter an Order: (1) permitting Plaintiff to issue Notice of this Lawsuit to similarly situated employees; (2) approving the form of the Notice contained in Exhibit A, attached hereto, and (3) permitting Plaintiff to issue such Notice via U.S. Mail, employee pay envelopes, and a workplace posting at Defendants' restaurant.

## II.    BACKGROUND FACTS

### 1.    Defendants' Business Operations

Defendants Pit Boss Rib House, Inc. and Phil Tsioukanaras (collectively "Defendants" or "the Company") operate one restaurant. See the affidavit of Maria Estrada, ¶ 3 (hereafter "Estrada Aff. ¶__"), attached hereto as Exhibit B. The Company is owned by Phil Tsioukanaras. Estrada Aff. ¶ 4. Antonio l/n/u manages the Company, but owner Phil Tsiokanaras is at the restaurant every other day to oversee operations. Estrada Aff. ¶ 5.

### 2.    Plaintiff and Other Employees Performed the Same or Similar Job Duties

Plaintiff began her employment with Defendant in December of 1999 and throughout her employment she worked as a 'Buser' or 'Busgirl.' Estrada Aff. ¶¶ 2, 7. Plaintiff's responsibilities as a 'Busgirl' included cleaning tables, cleaning the restaurant at the end of her shift, sweeping, and mopping. Estrada Aff. ¶ 7. Defendants' other employees are similarly situated to Plaintiff because they performed the same or similar job duties Plaintiff performed as restaurant employees. *See Harper, et al. v. Lovett's Buffet, Inc.,* 185 F.R.D. 358 (M.D. Ala. 1999) (conditionally certifying a class of hourly restaurant employees who held different positions).

### 3.    Plaintiffs and Other Employees Were Subject to the Same Compensation Scheme

Defendants subjected Plaintiff and their other employees to the same common pay practices. Defendants compensated Plaintiff and other employees straight-time regular rate for all time worked, including time worked in excess of forty (40) hours per week. Estrada Aff. ¶¶ 13, 14. Plaintiff and other employees worked a fixed schedule that did not change throughout the course of her employment. Estrada Aff. ¶ 11. Plaintiff typical

work week included working: Mondays from 5 p.m. to close[1]; Tuesdays from 11 a.m. to 2 p.m and returning to work at 5 p.m. until close; Wednesdays from noon to 2 p.m. and returning to work at 5 p.m. until close; off on Thursdays; Friday from noon to 2 p.m. and retuning to work at 5 p.m. until close; Saturday from 11 a.m. to close; and Sundays from noon to 11 p.m. *Id.*

### 4. Defendants' Failed to Pay Plaintiffs and Other Employees Overtime Wages

Plaintiff typically worked approximately fifty-four (54) hours per week. Estrada Aff. ¶ 10, 11. Plaintiff routinely and customarily worked for Defendants in excess of forty (40) hours per week. *Id.* Other employees were required to work schedules similar to Plaintiff's schedule, and they too routinely and customarily worked in excess of forty (40) hours per week for Defendants. Estrada Aff. ¶¶ 13, 14. Despite working in excess of forty (40) hours per week, Defendants did not pay Plaintiff overtime wages for the time she worked in excess of forty (40) hours per week. Estrada Aff. ¶ 12. Defendants likewise did not pay other similarly situated persons employed by the Company overtime wages for the time they worked in excess of forty (40) hours per week. Estrada Aff. ¶¶ 13, 14.

## II. ARGUMENT AND ANALYSIS

### A. Notice Under 29 U.S.C. §216(b) Should Be Issued to All Current and Former Employees Because Plaintiff Meets the Modest Factual Showing That She and Other Similarly-Situated Persons Were Victims of a Policy that Violated the Law

Section 216(b) of the FLSA authorizes employees such as Plaintiff to file a collective action lawsuit in order to recover their unpaid overtime pay on their own behalf

---

1 The restaurant typically closed at 11 p.m.

and on behalf of "other employees similarly situated." *Hoffmann- La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)(analyzing § 216(b) as incorporated into the Age Discrimination in Employment of 1967, 29 U.S.C. § 626(b)); *Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 U.S. Dist. LEXIS 37998, at *10-11 (N.D. Ill December 22, 2005)(J. Filip), attached hereto as Exhibit C.    Prospective members of the collective action may "opt-in" individually by filing a written consent in the court where the action is brought; a prospective member who does not opt-in is not part of the FLSA collective action and is not bound by the court's decision. *Id.*; *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 441 (N.D. Ill. 1982).  In order for notice to be issued to similarly-situated persons under Section 216(b), a plaintiff need only make a "modest factual showing sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Vasquez v. Tri-State Management Co.*, 2002 WL 58718, *3 (N.D.Ill. 2002).

Most courts, including those in the Northern District of Illinois, have adopted a two-step process to determine whether a plaintiff is "similarly situated" to potential members of the collective action. *Gambo*, 2005 U.S. Dist. LEXIS 37998, at *12; *Persin v. Careerbuilder, LLC*, 2005 U.S. Dist. LEXIS 29727 *4-5 (N.D. Ill. Nov. 23, 2005) (Kocoras, C.J.); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003); see also *Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002) (noting that the majority of courts prefer the two-stage approach); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218-19 (11th Cir. 2001) (finding two-tiered approach to be "an effective tool for district courts to use in managing these often complex cases").

As an initial matter, the court must assess whether the plaintiff has made a modest factual showing that the plaintiff and other putative plaintiffs together were potentially victims of a common policy or plan that violated the FLSA. "The modest factual showing requirement is not a stringent standard; a plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together." *Gambo*, 2005 U.S. Dist. LEXIS 37998, at *13. The FLSA's "similarly situated" requirement is considerably less stringent than the requirements of Rule 23 that common questions must predominate over individual questions in order for a case to be certified as a class action. *See Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 n. 2 (E.D.N.Y. 1988) ("the 'similarly situated' requirement of 29 U.S.C. § 216(b) is considerably less stringent than the requirement of Fed. R. Civ. Proc. 23(b)(3) that common questions 'predominate'"); *Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294, 305 (N.D. Cal. 1991) (same, quoting *Heagney*); *Wertheim v. State of Arizona*, No. 92-453, 1993 U.S. Dist. LEXIS 21292, at *2-3 (D. Ariz. September 30, 1993), attached hereto as Exhibit D; *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (Congress chose not to have the Rule 23 standards apply to class actions under the ADEA and FLSA and "instead adopted the 'similarly situated' standard. To now interpret this 'similarly situated standard by simply incorporating the requirements of Rule 23 . . . would effectively ignore Congress's directive"). Notably, the fact that the employees work at many different locations or in different jobs does *not* defeat the mailing of notice. *Bontempo v. Metro Networks*, No. 01 C 8969, 2002 U.S. Dist. LEXIS 11810 (N.D. Ill. 2002)(Holderman, C.J.)(granting nationwide notice in FLSA collective action), attached hereto as Exhibit E; *Gambo*, 2005 U.S. Dist. LEXIS 37998 (granting nationwide notice in

FLSA collective action); *See Church,* 137 F.R.D. at 298-99 (notice appropriate even though class members were employed at 112 different locations in 74 different jobs).

Under the second step, courts determine whether and in what form a FLSA collective action should proceed to trial. This determination is made once notice has been issued, the opt-in period has expired, and discovery has been completed. *Gambo,* 2005 U.S. Dist. LEXIS 37998, at *12

At this early stage in the case, Plaintiff respectfully moves the Court to approve notice to be distributed to all individuals who worked for Defendants, at any time since November 8, 2004. Plaintiff meets the lenient standard for allowing notice to be issued because the evidence at this early stage, as set forth in Section II above, indicates that Plaintiff and other persons employed by Defendants were subject to the same unlawful compensation arrangement and/or performed the same or similar job duties Plaintiff performed. Accordingly, Defendants' other restaurant employees are sufficiently likely to be similarly situated to Plaintiff to justify the mailing of the Notice.

Plaintiff's Affidavit documents that Defendants had a scheme in place to pay employees straight-time regular rate for all time worked, including time worked in excess of forty (40) hours per week. These facts meet the "modest factual showing" required to allow opt-in notice to be issued to the putative class.

**B.      Notice Should Be Sent to All Persons Employed By Defendants Since November 8, 2004**

The limitations period for FLSA claims is either two or three years, depending on whether the employer's violation was willful. 29 U.S.C. §255(a). A violation is willful if the employer knew its conduct was prohibited under the FLSA, or showed reckless

disregard as to whether that conduct was prohibited. *McLaughlin v. Richland Shoe* 486 U.S. 128, 133 (1988).

The statute of limitations on claims of potential collective action members are not stayed or tolled by the filing of the complaint by the named plaintiffs. *Threatt v. Residential CRF, Inc.,* No. 05-117, 2005 U.S. Dist. LEXIS 22509, at *11-12 (N.D. Ind. Oct. 5, 2005), *quoting Wertheim,* 1993 U.S. Dist. LEXIS 21292, at * 8. Rather, those persons are not deemed to have commenced their action, and the statute of limitations on their claims continues to run, until their written consents to become party plaintiffs have been filed with the court. 29 U.S.C. §256(b); *Threatt,* 2005 U.S. Dist. LEXIS 22509, at *13.

The question of whether Defendants' conduct was willful *vel non* requires discovery, and thus cannot be resolved at this stage in the litigation. Notice of this action to third-year employees cannot, however, await a determination on that issue, since the limitations period on the claims of those persons continues to run. Such a delay would result in the loss of some or all of earned overtime wages for persons employed by Defendant in the third year, should Defendants' conduct be found to be willful.

In its function as a remedial statute the FLSA must be interpreted broadly to effectuate its goals. *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 312 U.S. 590, 597 (1944). "[T]hese provisions, like the other portions of the Fair Labor Standards Act, are remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others. Those are the

rights that Congress has specially legislated to protect. Such a statute must not be interpreted or applied in a narrow, grudging manner." *Id.*

Given this intent, notice should reach *all* affected employees, and this includes those persons employed by Defendant in the third year. In the event that the determination is made that Defendants' conduct was not willful, third-year claims can be dismissed at that time.

### C.    The Section 216(b) Notice Proposed by Plaintiffs Is Proper.

The district court has the authority to regulate notice to similarly-situated persons under the "opt-in" provision of the FLSA. *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). A plaintiff's proposed Notice is appropriate so long as the notice is "fair and accurate." *Heitmann*, 2004 U.S. Dist. LEXIS 14669, at *10.

The form of Plaintiff's proposed Notice, as contained in Exhibit A, is "fair and accurate." Numerous district court judges in the Northern District of Illinois have approved notice and consent forms containing identical or nearly identical language as the forms Plaintiff proposes here: Exhibit A; See, e.g., *Ambriz v. New Premier Metal Recycling, Inc., et al.,* Case No. 07 C 2984, Order dated September 12, 2007 (Castillo, J.); *Acatitlan, et al. v. Classic Lawns, Inc.,* 06 C 4454, Order dated January 31, 2007 (Hibbler, J.); *Santos Umana, et al. v. Ultimate Spray-N-Wash, et al.,* Case No. 07 C 0801, Order dated August 6, 2007 (Lefkow, J.); *Ortiz v. Fields Imports Inc., et al.,* Case No. 06 C 5457, Order dated February 6, 2007 (Darrah, J.); *Chavez v. Dutch Valley Landscaping, et al.,* Case No. 06 C 4933, Order dated January 5, 2007 (Guzman, J.); *Gonzalez v. Tenacious Cleaning,* Case No. 05 C 5217, Order dated June 1, 2006 (St. Eve., J.); *Robles v. Summit Cold Storage Corp. et al.,* Case No. 06 C 3994 (Norgle, J.); *Esquivel v.*

*Armando's Finer Foods, Inc.,* Case No. 06 C 0758 (Gottschall, J.); *Diaz v. REIDesige'*

*Landscape Contractors, Inc. et al.,* Case No. 06 C 0720 (Gettleman, J.); *Garcia v.*

*Pompei Bakery III, et al.,* Case No. 05 C 7276 (Holderman, J); *Vargas v. Dukane*

*Contract Services, Inc. et al.,* Case No. 05 C 5703 (Nordberg, J.); *Zendejas v. Reel*

*Cleaning Services, Inc. et al.,* Case No. 05 C 6933 (Anderson, J.); *Camacho et al. v.*

*Metrostaff, Inc. et al,* Case No. 05 C 2682 (Coar, J.).

Plaintiff requests that potential party-plaintiffs be given forty-five (45) days to

return their Consent forms and opt-in to this litigation.

### E.    The Method of Notice

The FLSA does not provide any criteria for what constitutes a proper method of

Notice. In contrast, Rule 23 opt-out class actions require "the best notice practicable

under the circumstances, including individual notice to all members who can be

identified through reasonable effort." Fed R. Civ. P. 23(C)(2)(B). Notwithstanding the

separate rules governing Rule 23 opt-out class actions versus FLSA opt-in class actions,

some courts have applied the Rule 23 standard when evaluating the propriety of notice

in FLSA opt-in class actions. *Reab v. Elec. Arts, Inc.,* 214 F.R.D. 623, 630 (D. Co. 2002)

(citing Rule 23's "best notice practicable" provision in evaluating whether the method of

notice in a 216(b) action was proper); *Romero v. Producers Dairy Foods, Inc.,* 235

F.R.D. 474, 493 (E.D. Ca. 2006) (also citing Rule 23's " best notice practicable"

provision in evaluating whether the method of notice in a 216(b) action was proper).

Moreover, the Supreme Court has made clear that efficient administration of a collective

action requires "*accurate and timely notice* concerning the pendency of the action, so

9

that [the potential plaintiffs] can make informed decisions about whether to participate." *Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 163, 170 (1989) (emphasis added).

It may be necessary to use a variety of methods to ensure adequate notice. *Adams v. Inter-Con Security Systems, Inc.,* 242 F.R.D. 530, 541 (N.D. Ca. April 6, 2007); *Romero,* 235 F.R.D. at 493. Issuing Notice via a variety of methods is particularly necessary where there is a risk that not all class members will receive the Notice to which they are entitled through U.S. Mail alone. *Romero,* 235 F.R.D. at 493.

Defendants have failed to produce documents sufficient to identify all the members of the opt-in Class, let alone documents identifying address information for all such persons. Thus, sending Notice to such person by U.S. Mail alone will not be adequate to inform class members of the litigation. In addition to issuing Notice by U.S. Mail, therefore, Notice should also be issued in employees' weekly wages for one pay period and should be posted at the restaurant.

### 1.    Notice by First Class U.S. Mail

Plaintiff first requests that the Court authorize Notice via the traditional method of communication, First Class U.S. Mail. *Reab v. Electronic Arts, Inc.,* 214 F.R.D. 623, 630 (N.D. Colo. 2002). Numerous courts in this district have authorized the issuance of Notice via U.S. Mail. e.g. *Ambriz; Acatitlan; Santos Umana; Ortiz; Chavez; Gonzalez; Robles; Esquivel; Diaz; Garcia; Vargas; Zendejas; and Camacho, supra.* Notice via first class U.S. Mail is likewise appropriate in the instant case.

In addition, Plaintiff requests that the Court approve the form of the envelope Plaintiff proposes to use to issue Notice through U.S. Mail.  See Plaintiff's proposed envelope, attached hereto as Exhibit F. The proposed envelope contains language

stating: "Important: Court-Ordered Notice. Please read immediately." Such language will ensure adequate notice because it will advise recipients of the nature of the document and will lessen the risk that they may not read the contents of the Notice. The same language has previously been approved to be used on the outside of envelopes containing 216(b) Notices in the matter *Levy, et al. v. Verizon Information Services, Inc.,* Case No. 06 CV 1583 (E.D.N.Y. 2007). See an example of the envelope used to issue Notice in *Levy, supra,* attached hereto as Exhibit G.

### 2.    Notice in Employee Pay Envelopes

In order to ensure that that all putative plaintiffs receive accurate and timely notice of this collective action, Notice via alternative means is warranted. *Romero,* 235 F.R.D. at 492-493 (approving the issuance of notice via U.S. Mail and postings when "some risk exists that the failure of Defendants to provide the contact information of potential class members will prevent them from receiving notice to which they are entitled"). Plaintiff seeks to have the Notice forms inserted into employee pay envelopes.

The burden on Defendants to insert the Notice forms in employee pay envelopes is small. Plaintiff will provide Defendants with the necessary forms, and Plaintiff requests that Defendants insert the forms in employee envelopes for only one pay period.

### 3.    Posting at the Restaurant

Plaintiff further requests that Defendants post one copy of the Notice in the restaurant in order to effectuate "accurate and timely notice." Postings of the Notice forms are warranted to provide the "best notice practicable." *See Romero,* 235 F.R.D. at

493 (rejecting defendant's claim that posting at defendant's workplace would be "punitive" and approving the issuance of Notice via first class U.S. Mail and company postings because it provided the "'best notice practicable' to the potential class"), *Johnson v. American Airlines, Inc.*, 531 F. Supp 957, 961 (N.D. TX. 1982) (finding the proposed methods of Notice in an ADEA action, which included Notice via direct mail, posting on company bulletin boards, and publication without comment in the employer's newsletter, to be "both reasonable and in accordance with prior authority"); *Adams*, 242 F.R.D. at 541-42 (finding that the mailing of notice alone was insufficient and that the posting of notice at certain potential work locations necessary to ensure that all potential plaintiffs received notice of the lawsuit).

### F.    Plaintiff Requests that Defendants Produce a Complete Class List

Plaintiff further seeks a Court Order requiring Defendants to produce, within seven (7) days of the Court's Order, the names and home addresses of all past and present employees employed by Defendants within the last three (3) years.

WHEREFORE, for the above stated reasons, Plaintiff requests the Court enter an Order:

A.    Approving the form of the "Notice" and "Consent Form" as set forth in Exhibit A, and directing that the forms be sent to all potential class members;

B.    Requiring Defendants to submit to Plaintiff, within seven (7) days of the Court's Order, a complete list of the names and addresses of all current

and former employees employed by Defendants within the last three (3) years;

C.      Approving the issuance of Notice via first class U.S. Mail and the form of the Envelope contained in Exhibit F;

D.      Approving the issuance of Notice in employee pay envelopes in the first pay period after the Notice is mailed via first class U.S. Mail;

E.      Approving the posting of Notice at a conspicuous location at Defendants' restaurant during the notice period;

F.      Any further relief that this Court deems appropriate.

Respectfully submitted,

Dated:  February 19, 2008

s/Douglas M. Werman
DOUGLAS M.WERMAN (ARDC #6204740)
MAUREEN A. BANTZ (ARDC #6289000)
CARLOS G. BECERRA (ARDC #6285722)
Werman Law Office, P.C.
77 West Washington Street, Suite 1402
Chicago, Illinois 60602
(312) 419-1008

Attorneys for Plaintiff

13

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MARIA G. ESTRADA, on her own behalf )
and on behalf of all other persons similarly )
situated known and unknown, )
                                )
          Plaintiff, )
                                )    Case No. 07 C 6364
      v. )
                                )    Judge Zagel
PIT BOSS RIB HOUSE, INC., and )
PHIL TSIOUKANARAS, individually, )
                                )
        Defendants. )

## INDEX OF ATTACHMENTS

Proposed Notice of Lawsuit ........................................................................ A

Declaration of Maria Estrada ...................................................................... B

*Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 U.S. Dist. LEXIS 37998, at *10-11
(N.D. Ill December 22, 2005) ...................................................................... C

*Wertheim v. State of Arizona*, No. 92-453, 1993 U.S. Dist. LEXIS 21292, at *2-3 (D.
Ariz. September 30, 1993) ........................................................................... D

*Bontempo v. Metro Networks*, No. 01 C 8969, 2002 U.S. Dist. LEXIS 11810 (N.D. Ill.
2002) ........................................................................................................... E

Plaintiff's proposed envelope ...................................................................... F

Example of the envelope used to issue Notice in *Levy, supra* ........................... G

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA G. ESTRADA, on her own behalf and on behalf of all other persons similarly situated known and unknown, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 07 C 6364 |
| v. | ) ) | Judge Zagel |
| PIT BOSS RIB HOUSE, INC., and PHIL TSIOUKANARAS, individually, | ) ) ) | |
| Defendants. | ) | |

**NOTICE OF LAWSUIT**

**TO:**   **All Persons who worked at Pit Boss Rib House (9430 S. Roberts Road, Hickory Hills, IL 60457), from November 8, 2004 to the present.**

**RE:**   **A Lawsuit For Owed Overtime Wages Against Pit Boss Rib House, Inc. and Phil Tsioukanaras.**

**1.**   **What is this Notice about?**

This Notice is to tell you about a "collective action" lawsuit seeking owed unpaid overtime pay in which you may join if you worked at: Pit Boss Rib House (9430 S. Roberts Road, Hickory Hills, IL 60457) between November 8, 2004 and the present.

**2.**   **What is the lawsuit about?**

Plaintiff Maria Estrada was formerly employed by Defendants at Pit Boss Rib House (9430 S. Roberts Road, Hickory Hills, IL 60457).

In this lawsuit, Plaintiff asserts that she and other persons who worked for Defendants between November 8, 2004 and the present were not paid overtime wages for time they worked in excess of forty (40) hours per week. Under the Fair Labor Standards Act ("FLSA"), employers are required to pay certain employees "overtime pay" for all time they work over forty (40) hours in any one work week. Plaintiff claims that she and other employees who were denied overtime pay are entitled to recover their unpaid overtime pay, liquidated damages, and attorneys' fees and costs.

Defendants deny that they have violated the FLSA and deny that Plaintiff is entitled to any compensation in this lawsuit. This lawsuit is currently in the early pretrial stage. The Court overseeing this lawsuit has not made any determination whether anyone is entitled to any compensation. The Court will ultimately decide the merits of this case, and how much, if any,

overtime wages will be awarded to the class members. Nothing in this Notice should be viewed as an admission of wrongdoing by Defendant.

**3.    Why did I get this Notice?**

You received this notice because you have been identified as an employee who worked for Defendants between November 8, 2004 and the present, and who might be owed overtime wages. You are eligible to join this lawsuit.

**4.    How do I join the Case?**

It is your decision whether to join this lawsuit. If you worked more than forty (40) hours in a work week and were not paid overtime pay for all the overtime hours you worked, you may join this lawsuit by mailing, faxing, or delivering the enclosed yellow form (Consent to Become a Party Plaintiff) to Plaintiff's counsel at the following address:

Douglas M. Werman
Werman Law Offices, P.C.
77 W. Washington, Suite 1402
Chicago, Il 60602
Telephone (312) 419-1008
Facsimile (312) 419-1025

**5.    By what date do I need to return the Consent form to join this lawsuit?**

You must return the enclosed yellow Consent form on or before **[45 days from date of mailing]**. If you fail to return the completed Consent form to Plaintiff's counsel by **[45 days from date of mailing]**, you may not be able to participate in this lawsuit. That means you bear the risk of any non-delivery or delay in delivery of the Consent form.

**6.    What happens if I join this case?**

If you choose to join this lawsuit, you will be bound by any judgment in this case, whether it is favorable or unfavorable. While this lawsuit is proceeding, you may be required to respond to written questions, provide documents in your possession or control, participate in depositions, testify in court, or any combination of these things. If you do join this lawsuit, your continued right to participate in the case may depend upon a later decision by the District Court that you and Plaintiff are actually "similarly situated," in accordance with federal law.

The attorneys for the class Plaintiffs may be entitled to receive the payment of attorneys' fees and costs in this lawsuit should there be a recovery or judgment in Plaintiff's favor. If there is no recovery or judgment in Plaintiff's favor, you will not be responsible for any attorneys' fees. Any payment of attorneys' fees by Defendant to Plaintiff's counsel may be subject to prior Court approval. If there is a recovery, the attorneys for the class may receive a part of any settlement obtained or money judgment entered in favor of all members of the class. By joining this lawsuit, you designate Plaintiff as your agent to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

**YOUR IMMIGRATION STATUS WILL NOT AFFECT YOUR RIGHT TO RECOVER OWED BACK OVERTIME WAGES.**

These decisions and agreements made and entered into by the representative Plaintiff will be binding on you if you join this lawsuit.

**7.     What happens if I decide not to join this case?**

If you choose not to join this lawsuit, you will not be affected by any judgment or settlement rendered in this case, whether favorable or unfavorable to the class. If you choose not to join in this lawsuit, you are free to file your own lawsuit, either on your own behalf or through an attorney of your own choice.

**8.     Can I be fired or punished by the Company because I join this lawsuit?**

No. The FLSA prohibits retaliation against employees for exercising their rights under the Act. Therefore, the Company is prohibited from discharging you or retaliating against you in any other manner because you choose to participate in this lawsuit.

**9.     Who will my lawyer be if I join the lawsuit?**

If you choose to join this lawsuit, your interests will be represented by the named Plaintiff through his attorneys as counsel for the class. Counsel for the class is:

**Douglas M. Werman**
**Werman Law Offices, P.C.**
**77 West Washington, Suite 1402**
**Chicago, Illinois 60602**
**312/419-1008**

Further information about this Notice or the deadline for filing a Consent form or other questions about this lawsuit may be obtained by writing or telephoning Plaintiff's counsel at the number and address stated above.

**THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS.**

PLEASE DO NOT CALL OR WRITE THE JUDGE ASSIGNED TO THIS MATTER. THE JUDGE CANNOT ANSWER QUESTIONS CONCERNING THIS LAWSUIT OR THIS NOTICE.

3

**YOUR IMMIGRATION STATUS WILL NOT AFFECT YOUR RIGHT TO RECOVER OWED BACK OVERTIME WAGES.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MARIA G. ESTRADA, on her own behalf )
and on behalf of all other persons similarly )
situated known and unknown, )
                   )
         Plaintiff, )
                   )    Case No. 07 C 6364
     v. )
                   )    Judge Zagel
                   )
PIT BOSS RIB HOUSE, INC., and )
PHIL TSIOUKANARAS, individually, )
                   )
        Defendants. )

---

### NOTICE OF CONSENT TO BECOME A PARTY PLAINTIFF IN A COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARDS ACT

---

*(This form must be completed in ink, not pencil.)*

      By my signature below I represent to the Court that I have worked at Pit Boss Rib House, Inc.(9430 S. Roberts Road, Hickory Hills, IL 60457) during the last three (3) years, that there were weeks in which I worked over forty (40) hours when I did not receive overtime pay.

MY NAME IS: _____      _____
                                           *Please Print Name*

YOUR SIGNATURE: _____
                                         *Please Sign Name*

DATE ON WHICH I SIGNED THIS NOTICE: _____
                                         *Today's Date*

**Counsel for Plaintiff:**    **Douglas M. Werman
                          Maureen A. Bantz
                          Carlos G. Becerra
                          Werman Law Office, P.C.
                          77 W. Washington, Suite 1402
                          Chicago, Illinois 60602
                          312-419-1008**

***Note: This Second Page Will Not Be Filed With the Court***

NAME: _____ (Print Name)

TELEPHONE NUMBER: _____

ADDRESS: _____

CITY: _____    STATE: _____    ZIP CODE: _____

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MARIA G. ESTRADA, on her own behalf )
and on behalf of all other persons similarly )
situated known and unknown, )
                                   )
        Plaintiff, )
                                   )    Case No. 07 C 6364
   v. )
                                   )    Judge Zagel
PIT BOSS RIB HOUSE, INC., and )
PHIL TSIOUKANARAS, individually, )
                                   )
       Defendants. )

## DECLARATION OF MARIA ESTRADA

I, Maria Estrada, being first duly sworn on oath, depose and state based on personal knowledge and under penalty of perjury, that the following facts are true and correct:

1.     I am 46 years old and I currently reside in Hickory Hills, Illinois.

2.     I am a former employee of Pit Boss Rib House, Inc. (the "Company" or "Restaurant"). I was employed by the Company from approximately December of 1999 to June of 2007.

3.     During the course of my employment, I worked at The Pit Rib House location at 9430 S. Roberts Road, Hickory Hills, IL 60457.

4.     The Company is owned by Phil Tsioukanaras.

5.     The Company is managed by Antonio l/n/u, but the owner Phil Tsiokanaras is in the Restaurant every other day to oversee the operations.

6.     I was paid on a weekly basis. Either Phil Tsiokanars or Thomas L/N/U signed my paycheck. I was never paid tips.

1

7.     Throughout the course of my employment with the Company, I was employed as a Busgirl. My responsibilities included cleaning tables, cleaning the restaurant at the end of my shift, sweeping, and mopping.

8.     At the end of my employment I was paid approximately $6.50 per hour.

9.     Throughout the course of my employment with the Company, I was not required to punch a time clock.

10.     Throughout the course of my employment with the Company, I typically worked approximately fifty-four (54) hours per week. I have routinely and customarily worked more than forty (40) hours per week for the Company.

11.     Throughout the course of my employment I had a fixed schedule. The schedule was posted in the Restaurant and the hours I worked on a weekly basis never changed throughout the course of my employment. Mondays I typically worked from 5 p.m. to close which was 11 p.m. on most nights; Tuesdays I worked from 11 a.m. to 2 p.m. and returned to work at 5 p.m. and worked until close; Wednesdays I typically worked from noon to 2 p.m. and returned to work at 5 p.m. and worked until close; I was typically off on Thursdays; Fridays I worked from noon to 2 p.m. and returned to work at 5 p.m. and worked until close; Saturdays I worked from 11 a.m. to 11 p.m.; and Sundays I worked from noon to 11 p.m. I was not allowed to take breaks. I usually ate lunch quickly in a matter of minutes but was not allowed to take a lunch break.

12.     Although I worked in excess of forty (40) hours in each work week that I was employed by the Company, I was not paid overtime pay at the rate of one-and-one half times my hourly rate of pay for all such time I have worked in excess of forty (40) hours. Instead, I was

2

paid at my regular hourly rate of pay for all time I worked, including time I worked in excess of forty (40) hours in individual work weeks.

13.    I know other persons employed by the Company also routinely and customarily worked in excess of forty (40) hours in single work weeks but were not paid overtime wages for the time they worked in excess of forty (40) hours in individual work weeks.

14.    For example, Jose Guadalupe L/N/U and Daniel L/N/U, likewise worked in excess of forty hours in single work weeks for the Company and were not paid overtime wages for the time they worked in excess of forty (40) hours in individual work weeks. Instead, they were paid similarly to how I was paid. They were paid their regular hourly rate of pay for all time they worked, including time they worked in excess of forty (40) hours in individual work weeks.

15.    I am not suffering from any impediment and am competent to testify to all of the foregoing.

16.    Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

17.    Spanish is my native language. This declaration is written with the assistance of a Spanish translator.

FURTHER AFFIANT SAYETH NAUGHT.

*Maria Estrada*
Print name

*Maria Estrada*
Sign name

3

Dated: 01/02/08

I certify that I truly translated the foregoing Affidavit from English to Spanish by reading same in Spanish to Maria Estrada on February 12, 2008.

Dated: 2·12·08

# EXHIBIT C

LEXSEE 2005 U.S. DIST. LEXIS 37998

**GERALD P. GAMBO, et al., Plaintiff, v. LUCENT TECHNOLOGIES, Inc., Defendant.**

**No. 05 C 3701**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2005 U.S. Dist. LEXIS 37998*

**December 22, 2005, Decided
December 22, 2005, Filed**

**COUNSEL:** [*1] For Gerald P Gambo, on behalf of himself and all other plaintiffs similarly situated known and unknown, Plaintiff: Douglas M. Werman, Christopher John Williams, Werman Law Office, P.C., Chicago, IL; Jamie G. Sypulski, Law Offices of Jamie G. Sypulski, Chicago, IL.

For Lucent Technologies, Inc., Defendant: Julie Badel, Epstein, Becker & Green, Chicago, IL; Tanja Samardzija, Freed, Weiss & Flaum, Chicago, IL.

**JUDGES:** Mark Filip, United States District Judge.

**OPINION BY:** Mark Filip

**OPINION**

MEMORANDUM OPINION AND ORDER

Before the Court is the Motion of Plaintiff, Gerald Gambo (also "Plaintiff"), for an Order to Authorize Notice to Similarly-Situated Persons Pursuant to *29 U.S.C. § 216(b)* ("Motion"). The Motion also extensively references evidentiary materials concerning Plaintiffs Yolanda Montenegro and Marcus Washington, who have opted into this suit, which alleges violations of the Fair Labor Standards Act, *29 U.S.C. § 201 et seq.* [1] Plaintiff seeks the Court's approval of a proposed notice of the action to other similarly-situated employees and former employees of Defendant, Lucent Technologies, Inc. (also "Defendant" or "Lucent"), who worked [*2] in Lucent's North American Region Delivery and Customer Support Center ("NAR"). Defendant argues that notice should not be provided, and in the alternative, that the proposed notice should be amended in multiple respects. Plaintiff adopted changes to the proposed notice in response to some of Defendant's objections, and limited areas of dispute endure. As explained below, Plaintiff's Motion is granted in substantial part, as outlined herein, and the proposed notice is approved subject to modifications discussed later.

> 1 An additional plaintiff, Karen Foster, has opted-in to this action, but her name does not appear on any of the pleadings relating to Plaintiff's request to authorize notice.

BACKGROUND

Defendant is a large corporation comprised of three business groups: the Network Solutions Group, Lucent Worldwide Services, and Bell Labs. (D.E. 16, Ex. 1 at 1.) [2] Lucent Worldwide Services is comprised of a number of operating and support units, including the North American Region Delivery and Customer [*3] Technical Support ("NAR") organization. NAR is comprised of twelve operating groups. (*Id.*) Each of the twelve operating groups has its own management structure with its own directors and managers. (*Id.*)

> 2 Docket entries are designated as "D.E. ," followed by the appropriate district court docket number.

Plaintiff Gambo was employed in the position of Senior Technical Associate ("STA") in the Wireless Technical Support Center ("WTSC"), a unit within NAR. (D.E. 12 at 2.) He alleges that between at least June 2002, and November 2004, Defendant had a policy of not paying overtime wages to STAs in NAR for "all on-call' time worked during individual work weeks." (D.E. 1 at 3.) Plaintiff alleges that this practice violates the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201 et seq.*, which requires employers to pay one and one-half times

an employee's regular hourly pay for hours worked in excess of forty hours in an individual workweek. (*Id.*)

Attached to Plaintiff's [*4] Motion are three exhibits which include, *inter alia*, affidavits from persons employed by Defendant as STAs stating that, during the course of their employment as STAs, they each worked in excess of forty hours per week while performing pager duty and were not paid overtime wages for their excess hours worked. (D.E. 12, Exs. A-C.) Plaintiff Gambo's affidavit (the "Gambo Affidavit") states that he is employed as an STA within WTSC and that he regularly worked in excess of forty hours without receiving overtime wages. (*Id.*, Ex. A at 1.) It also states that, during the time he spent on pager duty, he was unable to travel more than several minutes away from his home. (*Id.* at 2.) The second affidavit (the "Montenegro Affidavit"), from Yolanda Montenegro ("Montenegro"), states that she worked as an STA within WTSC, and that she worked in excess of forty hours without being paid overtime. (*Id.*, Ex. B at 1.) Attached to Montenegro's affidavit is a document describing WTSC's pager-duty protocol, which lists the hours during which technical support was provided as well as the procedures for creating an "assistance request." (*Id.*, Att. 1.) A second attachment is an email exchange [*5] between Montenegro and Therone Watson ("Watson"), the Technical Manager for Customer Solutions Technical Support, in which Montenegro inquired about "out-of-hrs backpay for STA's in the WTSC" and Watson replied that "it looks like we were out of compliance in the regards of compensation for time worked over 40 hours for non-exempt employees." (*Id.*, Att. 2.) In that email, Watson also suggested to Montenegro that she "work with [her] manager and HR to determine what was the work that you did over the last two years and how does fit [sic] within the FLSA agreement." (*Id.*) The final affidavit (the "Washington Affidavit") is from Marcus Washington ("Washington"), who states that he has been employed within NAR as an STA. (*Id.*, Ex. C at 1.) Washington also declares that he customarily worked in excess of forty hours per week, as did other persons employed as STAs, and that much of that excess time was spent performing pager duty. (*Id.* at 2.)

Defendant has also submitted a number of declarations and supporting documents. The first is an affidavit from Suzanne Labracio (the "Labracio Affidavit"), who is employed by Defendant as a Human Resources Manager. (D.E. 16, Ex. [*6] 1 at 1.) The Labracio Affidavit states that Defendant conducted an internal investigation to determine "whether some STAs were owed overtime for pager duty which may have restricted the use of their personal time." (*Id.* at 2.) According to the Labracio Affidavit, eight employees were identified as being affected by "the issue"-that is, they may have been owed overtime compensation. (*Id.*) Defendant, without admitting any of

these employees were owed overtime, "offered these employees monies for all the time that they worked primary pager duty." (*Id.*) The Labracio Affidavit states that five of the eight have accepted Defendant's offer as "full and final satisfaction of all claims for lost compensation," and those employees received amounts ranging from $ 19,965.53 to $ 65,127.37. (*Id.* at 2-3.) Attached to this affidavit are the letters Defendant sent to the five employees who accepted Defendant's offer. (*Id.*, Ex. 1A.)

Defendant's second submission is an affidavit from Gregory Givens ("Givens"), a Technical Manager who was Plaintiff Gambo's supervisor in May 2004. (*Id.*, Ex. 2.) Givens stated that in May 2004, Plaintiff was the only STA working for him. Givens [*7] also stated that Plaintiff Gambo, who was on pager duty during that time, was required "to respond to a page within ten minutes" and "to access the customer's switch by computer in order to analyze the problem." (*Id.*)

Defendant's third submission is an affidavit from Stephen Bruzda ("Bruzda"), a Technical Manager in the NAR. Bruzda states that he had one STA working for him in September 2004; that STA "was not assigned on-call or pager duty in excess of forty hours during any week because the organization utilized a shift schedule for such duties." (*Id.*, Ex. 3 at 1.)

Defendant's fourth submission is an affidavit from Robert Posch ("Posch"), a Technical Manager at Lucent, who managed the 5ESS International Support team in September 2004. (*Id.*, Ex. 4.) Posch states that he had one STA working for him in September 2004, and that STA was not restricted geographically during pager duty. Posch also stated that Defendant provided the STA with a cell phone for the callbacks and that there was no requirement that the STA have access to a computer or a database to provide support. (*Id.*)

Defendant's final submission is an affidavit from Robert E. King ("King"), also a Technical [*8] Manager at Lucent, who managed a team that provided support services for NAR 5ESS Switches. (*Id.*, Ex. 5 at 1.) King states that in September 2004, he had four STAs reporting to him that were assigned out-of-hours pager duties. (*Id.*) King further states that none of those STAs were restricted geographically during pager duty, they were provided with a cell phone to enable call-backs, and that there was no requirement that they have access to computers or databases to perform pager duty. (*Id.*)

Gambo, after being granted leave to supplement the Motion for notice, provided additional evidentiary material obtained in early discovery. (D.E. 22.) Plaintiff submitted:

. The relevant overtime-related portions from Defendant's 2001, 2003, and 2004 "Personnel Guides." (Id., Exs. A-C.)

. An email from Michele Suarez, dated February 9, 2005, entitled "Prestinario SAT Overtime Report." (Id., Ex. D.) This email identified twelve STAs, working under three different directors and eight different supervisors, who were potentially owed overtime pay. (Id.)

. An HR Advisory Council Report, dated May 23, 2005, entitled "Fair Labor Standards Act (FLSA) Pay Issues [*9] for On-Call (Pager) Duty for Non-Exempt Employees." (Id., Ex. E.) This report identifies overtime-pay issues for STAs on pager duty in LWS Mobility Product Solution and LWS-Retrofits-Wireline. (Id.)

. An email from Hilda Leveno, HR Director and Member of the HR Advisory Council, dated May 24, 2005, stating that some line organizations conducted an analysis of STAs' potential overtime-pay claims. (Id., Ex. F.)

. An August 9, 2005, presentation entitled "Prestinario Organization STA OT Summary" that summarizes potential overtime compensation issues. (Id., Ex. G.)

. A February 22, 2005, email from Givens to Umesh Joshi forwarding reports prepared by Marilyn Barnes ("Barnes"), Director of LWS Mobility Solutions Technical Support, in which Barnes states that Lucent owes at least six STAs "BIG Time!" for "the past 2 years." (Id., Ex. H.)

Defendant also filed a supplemental memorandum that included Plaintiff's Answer to Lucent's Rule 36 Requests for Admission (D.E. 30, Ex. B), which Answer purportedly establishes that Gambo was the only one of the three Plaintiffs who was assigned to secondary and tertiary pager duty. The supplemental memorandum also [*10] includes an affidavit from Melinda Jackson-Douglas ("Douglas"), a Senior HR Business Partner at Lucent. (Id., Ex. A.) Douglas states that NAR is divided into numerous operating groups, that those operating groups are divided into numerous subgroups, and that Gambo and Montenegro worked under Barnes in a part of the Technical Support Services operating group, the

WTSC. (Id.) Douglas further states that Montenegro and Washington worked under Marrine Thomas in a part of the Professional Services Delivery and Engineering operating group. (Id.) Douglas does not identify the timeframe during which any Plaintiff worked in any particular group, nor does Douglas state that no Plaintiff worked in groups besides those listed in the affidavit.

ANALYSIS

A. The Two-Step Process

FLSA Section 7 requires covered employers to pay their employees overtime wages (one and one half regular rate) for hours worked in excess of forty hours in a single week. [3] Section 216(b) of Title 29 of the United States Code (also "FLSA Section 16(b)") permits a plaintiff to file a collective action, on behalf of himself or herself and other employees similarly situated, to recover unpaid overtime [*11] wages and liquidated damages from employers who violate FLSA Section 7. A prospective member of the collective action may "opt-in" by filing a written consent in the court where the action is brought; a person who does not opt-in is not part of the collective action and is not bound by the court's decision. Id.; Allen v. Marshall Field & Co., 93 F.R.D. 438, 441 (N.D. Ill. 1982). FLSA Section 16(b) does not specify a procedure for providing notice to other prospective members of the collective action; district courts are afforded discretion to sensibly shape the notice process. See Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989) (interpreting opt-in provision in ADEA that incorporates Section 16(b)). District courts in the Northern District of Illinois have regularly exercised discretionary authority over the notice process. See, e.g., Persin v. Careerbuilder, LLC, 2005 U.S. Dist. LEXIS 29727, No. 05 C 2347, 2005 WL 3159684 (N.D. Ill. Nov. 23, 2005) (Kocoras, C.J.); Perez v. Radioshack Corp., 2003 U.S. Dist. LEXIS 10152, No. 02 C 7884, 2003 WL 21372467 (N.D. Ill. June 13, 2003) (Pallmeyer, J.). The Seventh Circuit has determined that a district court may not [*12] prohibit a plaintiff from sending notice altogether. See Woods v. N. Y. Life Ins. Co., 686 F.2d 578, 580 (7th Cir. 1982). Beyond that limitation, the Seventh Circuit has not provided guidance on how a district court should exercise its discretion in the notice process.

3 Defendant does not dispute that its employees are covered by FLSA's "enterprise coverage" provision; however, it does deny that it violated the requirements of the FLSA. (D.E. 10 at 2.)

This Court will employ a two-step method to determine whether Plaintiff is "similarly-situated" to potential members of the collective action. This two-step method

has been used by a number of District Courts in the Northern District of Illinois. *See, e.g., Persin, 2005 U.S. Dist. LEXIS 29727, 2005 WL 3159684 at *1* (collecting cases, including circuit precedent from other federal appellate courts); *Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)* (Norgle, J.); *Garza v. Chicago Trans. Auth., 2001 U.S. Dist. LEXIS 6132, No. 00 C [*13] 0438, 2001 WL 503036, *2 (ND Ill. May 8, 2001)* (Leinenweber, J.) (collecting cases).

Under the first step, the Court assesses whether Plaintiff has made a modest factual showing sufficient to demonstrate that the Plaintiff and other putative plaintiffs together were potentially victims of a common policy or plan that violated FLSA. *See, e.g., Persin, 2005 U.S. Dist. LEXIS 29727, 2005 WL 3159684, at *4.* The "modest factual showing" requirement is not a stringent standard; a plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together. *See Garza, 2001 U.S. Dist. LEXIS 6132, 2001 WL 503036, at *2.* In this regard, caselaw repeatedly emphasizes that this first-step analysis is not as demanding as that employed at the second stage, and is certainly not as demanding as the analysis used to see if certification of a non-FLSA class is appropriate under *Fed. R. Civ. P. 23. See Flores, 289 F. Supp. 2d at 1044; Perez, 2003 U.S. Dist. LEXIS 10152, 2003 WL 21372467, at *1; Vazquez v. Tri-State Mgmt. Co., Inc., 2002 U.S. Dist. LEXIS 385, No. 01 C 5926, 2002 WL 58718, *2 (N.D. Ill. Jan. 14, 2002); Garza, 2001 U.S. Dist. LEXIS 6132, 2001 WL 503036,  [*14]  at *2.* If Plaintiff can make a modest factual showing in favor of notice, the Court may, in its discretion, authorize notice to other potential members of the collective action. The possibility of a fact-intensive inquiry into whether all members of the eventual putative opt-in class are in fact similarly-situated does not preclude authorizing notice, although the need for such an analysis might weigh against or defeat certification of an actual class (or influence the form of any eventual certified class) at the second stage. *See, e.g., Persin, 2005 U.S. Dist. LEXIS 29727, 2005 WL 315684, at *1* ("Assuming the notice is sent, it is not until potential plaintiffs have been given a chance to opt in' to the collective action and discovery is complete that the court more rigorously reviews whether the representative plaintiff and the putative claimants are in fact similarly situated so that the lawsuit may proceed as a collective action.") (citing *Thiessen v. GE Capital Corp., 267 F.3d 1095, 1102-03 (10th Cir. 2001)).*

As indicated, under the second step, the Court determines, after discovery closes, whether and in what form a FLSA collective overtime action should proceed [*15] to trial. At the second step, the Court undertakes a more detailed "inquiry into the veracity of the allegations that all putative claimants are similarly situated." *Persin,*

*2005 U.S. Dist. LEXIS 29727, 2005 WL 3159684, at *4* (citation omitted).

B. Plaintiff Has Made a "Modest Factual Showing"

Here, Plaintiff has made a "modest factual showing" of a common policy or plan in violation of FLSA's overtime provisions. The Gambo affidavit states: STAs in the WTSC worked in excess of forty hours per week; much of the excess time was spent on pager duty; he was unable to travel more than several minutes away from his home while on pager duty; and Defendant had a policy of not providing compensation for pager duty. (D.E. 12, Ex. A at 1-2.) The Montenegro affidavit supports Gambo's statements about STA pager duties and WTSC's compensation policies. (*See id.,* Ex. B at 1-2.) The Washington affidavit provides evidence that STAs in another NAR unit were subject to the same policy of not providing overtime compensation for pager duty. (*Id.,* Ex. C at 2.) Thus, Plaintiff has demonstrated that a number of employees who allegedly performed similar job duties were subject to the same or similar policy [*16]  that may have violated FLSA. In addition, the email exchange between Watson and Montenegro, in which Defendant's agent admits that "it looks like we were out of compliance" with FLSA's overtime provisions (*id.,* Ex. B, Att. 2), lends credibility to Plaintiff's assertions. Finally, the documents tendered in Plaintiff's supplemental memorandum further support Plaintiff's contention that other nonexempt STAs performed out-of-hours pager duty and did not receive overtime compensation. For example, one Lucent document refers to "potential for significant overtime back pay for STA (nonexempt) employees within certain LWS organizations for on-call (pager) duty during the past 2 years" and notes that two organizations were "involved to date." (D.E. 22, Ex. E at 1.) While Lucent's ultimate conclusions about whether certain employees deserve overtime pay are not determinative to whether notice should issue, Defendant's internal recognition that this was an issue that potentially affected a number of LWS organizations (LWS being one of three top-level branches of Lucent) bolsters Plaintiff's request to issue notice.

Defendant advances several arguments against authorization of notice. Defendant [*17]  claims that its decentralized organizational structure made a "common plan or policy" impossible. (D.E. 16 at 6.) However, Plaintiff has provided evidence suggesting that multiple units had the same overtime-compensation policy for STAs on pager duty. (*Id.,* Exs. A-C.) Furthermore, Defendant cites no authority which requires a plaintiff to show that a common policy stems from a centralized authority; if multiple decentralized units adopted an unlawful policy with identical content-for example, "we simply refuse to pay time-and-a-half, irrespective what

the law requires"-concerning similarly-situated workers, that would appear to be a "common policy or plan," particularly for purposes of assessing the propriety of notice at step one. Nothing in the caselaw cited by the parties, at least, suggests that the common policy must stem from a top-down decision of central management. If individual business units adopt similarly unlawful policies and operate in materially similar ways as to materially similar workers, then a "common policy or plan" would appear to exist. And, again, the Court need not sort out all of these issues at this time; if discovery demonstrates that the putative class [*18] is inappropriate, unjustified, or unworkable, Defendant has reserved its right to oppose actual certification in some or all forms or to seek severance, as appropriate.

Defendant also claims that STAs who have accepted payment are not similarly situated. (D.E. 16 at 8-9.) The Court respectfully disagrees. Based on the authorities cited by the parties at this stage, at least, it appears that wholly-private settlements of overtime wages and liquidated damages claims are unenforceable; a valid waiver of claims can only be obtained through a settlement administratively supervised by the Secretary of Labor. See Walton v. United Consumers Club, 786 F.2d 303, 306 (7th Cir. 1986) ("The Fair Labor Standards Act is designed to prevent consenting adults from transacting about minimum wages and overtime pay. [. . . .] Courts therefore have refused to enforce wholly private settlements. [. . . .] Section 16(c) creates the possibility of a settlement, supervised by the Secretary [of Labor] to prevent subversion, yet effective enough to keep out of court disputes that can be compromised honestly.") (citation omitted); Flores, 289 F. Supp. 2d at 1047 (similar, [*19] and citing Walton, 786 F.2d at 306).

Defendant also argues that notice is inappropriate because the scope of the collective action will depend upon a "case-by-case investigation" of each STA's job duties and compensation. (D.E. 30 at 2.) Citing Hoffman-La Roche, Defendant argues that "individualized inquiries such as these do not support the economy of scale envisioned by the FLSA collective action procedure." (Id.) Perhaps the investigation and analysis required to determine whether particular opt-ins are similarly situated, so as to fairly proceed to judgment in a collective action, ultimately will prove to be sufficiently unwieldy or cumbersome that a collective action will not be appropriate in some or any form. See, e.g., Persin, 2005 U.S. Dist. LEXIS 29727, 2005 WL 3159684, at *4. But that does not, under relevant caselaw, mean that notice may not fairly issue under the more lenient step one FLSA analysis. See, e.g., id.

Defendant also cites Holt v. Rite Aid Corp., 333 F. Supp.2d 1265 (N.D. Ala. 2004), and Diaz v. Electronics Boutique of America, Inc., 2005 U.S. Dist. LEXIS 30382,

Case No. 04 CV 0840E, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005), in support [*20] of the proposition that notice should not issue because individualized determinations predominate in this case. Holt is inapposite: the court denied the motion to facilitate notice after the parties had conducted extensive discovery (id. at 1274), so much discovery, in fact, that the court essentially proceeded to the step two FLSA analysis. See id. at 1274 & n.4. This Court is not undertaking (nor has either party even suggested that the Court should undertake) the step two analysis now. In Diaz, there were two features of the plaintiffs' claims that made them unamenable to a collective action. First, the named plaintiffs' claims were fundamentally distinct-one plaintiff alleged that he was improperly classified as exempt while another (who was classified as exempt) alleged that defendant manipulated and doctored his time records to avoid paying overtime wages. 2005 U.S. Dist. LEXIS 30382, 2005 WL 2654270 at *3. Second, plaintiffs did not provide any evidence of a "common policy or plan"; all of their allegations were "insufficiently specific beyond their own respective circumstances." 2005 U.S. Dist. LEXIS 30382, [WL] at *4, *5 (punctuation and citations omitted). Neither of these features is present [*21] in the instant matter-the Plaintiffs' claims are fundamentally similar (at least as presently suggested, with some corroborating evidence, including Defendant's own assessment of things in at least some communications), and the Plaintiffs have provided evidence of a common policy or plan that suggests that their experiences may be representative of other STAs in NAR. Defendant may (or may not) ultimately be correct that individualized questions will predominate and that this problem, or others, will make a collective action inappropriate, impractical, or unwise. The Court takes no position on such issues, and both parties are free to raise appropriate arguments at step two. However, Plaintiff has sufficiently satisfied the burden at step one of the FLSA analysis for notice properly to issue. Accord, e.g., Persin, 2005 U.S. Dist. LEXIS 29727, 2005 WL 3159684, at *1.

Defendant's remaining arguments are tangential to Plaintiffs' allegation that STAs did not properly receive overtime wages when their pager duty resulted in their working in excess of forty hours per week. Defendant provides evidence that at least one STA did not work overtime because of shift-scheduling (see D.E. 16, Ex. 3), and [*22] that another STA's freedom of movement was not restricted while performing pager duty. (Id., Ex. 4). Defendant does not show (nor does Defendant ever explicitly claim) that it paid overtime wages when STAs performing pager duty worked in excess of forty hours per week. Furthermore, these affidavits are limited to a narrow time period and do not speak to the three-year putative time period covered by Plaintiffs' suit.

Defendant also provides evidence that STAs perform different duties (D.E. 16, Ex. 1 at 2), but, at this stage, Plaintiff need not demonstrate that all STAs performed identical duties in order for the Court to authorize notice. *See, e.g., Garza, 2001 U.S. Dist. LEXIS 6132, 2001 WL 503036, at \*3* ("That the Plaintiffs and other potential plaintiffs may have different jobs in the rail system, earn different amounts of money, and have attended different amounts or types of training does not mean that they are not operating under the same policies that allegedly entitle them to overtime pay.") (citation omitted). Defendant's arguments are more relevant to determining the ultimate scope, if any, of the collective action, an issue the Court will consider at step two. *See id.; [\*23] accord, e.g., Persin, 2005 U.S. Dist. LEXIS 29727, 2005 WL 3159684, at \*3-4.*

### C. Plaintiff's Proposed Notice Form Is Acceptable With Slight Modifications

While most of Defendant's objections to the proposed notice have been incorporated into Plaintiff's amended version of the proposed notice (*see* D.E. 17, Ex. A), some points of disagreement remain. The Court orders the following modifications to the notice: (1) the "To" line should be limited to "persons employed as STAs who performed on-call' or pager' duty and have not been paid overtime wages for all hours worked in excess of 40 hours during any week"; (2) the "Description of the Lawsuit" section should be changed to reflect the changes in the "To" line; (3) in the section "Your Right to Participate in This Lawsuit," the phrase "may depend" should be changed to "will depend"; and (4) in the section "Your Legal Representation If You Join," recipients should be informed of their right to select separate counsel, bring a separate action, or not to sue.

The Court denies Defendant's remaining objections to the revised notice. Defendant requests that the section "Further Information" include defense counsel's name and contact information [\*24] (D.E. 16 at 12); there is no basis in law or logic for this request. Defendant also argues that the notice should not include the case caption because it may be interpreted as judicial approval of the merits of the suit. (D.E. 16 at 12.) The Court finds that Plaintiff's removal of the judge's name is sufficient to address this objection, and notes that a number of courts in this district have approved notices with the case caption suggested by Plaintiff. *See, e.g., Trembczinski v. M&M Roofing, Inc.,* Case No. 03 C 5079 (Castillo, J.) (minute order dated Dec. 9, 2003); *Sorenson v. CHT Corp., Inc.,* Case No. 03 C 1609 (Pallmeyer, J.) (minute order dated May 8, 2003). Finally, Defendant argues that the second and fourth paragraphs of the section "Who May Join the Lawsuit" should be deleted as redundant. (D.E. 16 at 10.) The Court finds this language acceptable and denies Defendant's request to strike these paragraphs. [4]

4 In the Motion, Plaintiff also requests that this Court issue a gag order forbidding Defendant from communicating with any prospective class member concerning the suit or settlements of claims. The Court denies this request without prejudice. As the Court previously explained, this request has an aura of a prior restraint, a measure quite disfavored in the law. Furthermore, caselaw teaches that this step is unnecessary to prevent improper manipulation of putative opt-in plaintiffs. *See Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042, 1047 & n.2 (N.D. Ill. 2003).* In addition, and independently, as was the case in *Flores,* Plaintiff has failed to create the clear record and specific findings that would justify this Court in considering the granting of such a gag order.

### [\*25] CONCLUSION

Plaintiff's Motion (D.E. 12) is granted in substantial part, and the revised notice form is approved subject to the modifications discussed in this opinion, such that notice may issue within the NAR unit.

So ordered.

Mark Filip

United States District Judge

Northern District of Illinois

Dated: December 22, 2005

# EXHIBIT D

LEXSEE 1993 U.S. DIST LEXIS 21292

**PAT WERTHEIM, on behalf of himself and others similarly situated, Plaintiff, vs. STATE OF ARIZONA; ARIZONA DEPARTMENT OF PUBLIC SAFETY, Defendants.**

**No. CIV 92-453 PHX RCB**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA**

*1993 U.S. Dist. LEXIS 21292*

**September 28, 1993, Decided**
**September 30, 1993, Filed**

**DISPOSITION:**    [*1] Plaintiff's motion to authorize notice to potential class members and to approve of notice and consent form submitted by plaintiff granted. Defendant's motion to strike the allegedly improper consents to join this suit (Doc. 54) granted in part and denied in part.

**COUNSEL:** For PAT A WERTHEIM, plaintiff: Joseph W Bell, Esq, Fredrick P Furth, Esq, Daniel S Mason, Esq, Furth Fahrner & Mason, San Francisco, CA. R Chip Larsen, Esq, James J Farley, Esq, Farley Robinson & Larsen, Mesa, AZ.

For ARIZONA, STATE OF, ARIZONA PUBLIC SAFETY, DEPARTMENT OF, (Arizona), defendants: Michael K Kennedy, Esq, Gallagher & Kennedy PA, Phoenix, AZ.

**JUDGES:** Robert C. Broomfield, United States District Judge.

**OPINION BY:** Robert C. Broomfield

**OPINION**

ORDER

Plaintiff Pat Wertheim has filed a motion requesting the court to approve and authorize notice to potential opt-in class members. Defendant Arizona Department of Public Safety (DPS) has filed a response and Wertheim has replied. The court heard oral argument on the motion on April 12, 1993. After Wertheim filed his motion to authorize notice, DPS filed a motion to strike the "Consent to Join Lawsuit" forms and opt-in lists already filed with the court. According to DPS, [*2] these attempts to increase the plaintiffs in this suit are technically deficient as well as procedurally improper.

*I. BACKGROUND*

This case is brought under the Fair Labor Standards Act (FLSA), *29 U.S.C. §§ 207-216 (1988)*. Plaintiff Wertheim serves DPS in the capacity of Latent Prints Examiner (LPE) III; he formerly served DPS as an LPE II. Wertheim alleges that DPS wrongfully deprived him and others similarly situated of overtime pay in violation of the FLSA. *See id. § 207(a)(1)* (requiring overtime pay at a rate of one and one-half times normal pay for hours worked by employees in excess of forty per week).

The primary issue addressed by this order is whether to authorize notice to other past and present employees of DPS who allegedly are similarly situated to Wertheim. Section 216(b) of the FLSA provides for a special kind of opt-in class action in FLSA cases. Pursuant to section 216(b), courts may authorize notice to a class that is "similarly situated" to the named plaintiff. *See Hoffmann-La Roche v. Sperling, 493 U.S. 165, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480 (1989)*. The requisite showing of similarity of claims under the [*3] FLSA is considerably less stringent than the requisite showing under *Rule 23 of the Federal Rules of Civil Procedure. See, e.g., Partlow v. Jewish Orphans' Home, 645 F.2d 757, 758 (9th Cir. 1981); Church v. Consolidated Freightways, Inc., 137 F.R.D. 294, 306 (N.D. Cal. 1991)*. All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA.

In an order dated July 29, 1992, the court denied Wertheim's initial motion for class approval without

prejudice. The court concluded that Wertheim had not made even a prima facie case that the class members in his proposed class were similarly situated to him. [1] Wertheim since has submitted a renewed motion, requesting court approval and authorization of notice to a class and two sub-classes of former and present DPS employees.

> 1 Wertheim contended at that time that the opt-in class should include:

>> All present or former employees of the State of Arizona who, at any time since March 10, 1989, worked overtime hours without receiving overtime pay and/or were not paid for time spent in restricted on-call status.

## [*4] II. WERTHEIM'S PROPOSED CLASS

Wertheim requests that the court authorize notice to "all present or former employees of DPS who worked overtime hours since March 10, 1989 in job titles which were classified as exempt from the FLSA." He contends that the members of this class are similarly situated to each other and to him for two reasons.

First, Wertheim contends that the entire proposed class was misclassified as exempt from the FLSA at the same time and by the same centralized decisionmaking authority, the Law Enforcement Merit Systems Council (LEMSC). According to Wertheim, the LEMSC misclassified the entire proposed class as exempt in the Summer of 1985 in response to the Supreme Court's decision in *Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528, 83 L. Ed. 2d 1016, 105 S. Ct. 1005 (1985)*, which held that the FLSA applies to state and local governments. Wertheim further asserts that no DPS job title has been changed from exempt to nonexempt status since 1985.

Second, Wertheim argues that the proposed class members not only were misclassified by the same body, but are misclassified for essentially the same reasons. Specifically, Wertheim [*5] contends that certain LIPS policies applicable to all of the proposed class members make clear that the class members are not paid on a salary basis, which is a prerequisite for an employee to be exempted from the FLSA's overtime provision.

The FLSA sets forth exemptions to its scope and accompanying regulations set forth criteria that must be met for the exemptions to apply. *See 29 U.S.C. § 213(a)(1)* (setting forth exemptions for executive, admin-istrative, and professional employees); 29 C.F.R. § 541 (1992) (setting forth criteria for determining whether an employee is an executive, administrative, or professional employee). One of the criteria that must be met for the exemptions to apply is that the employee must be paid "on a salary basis," as opposed to on an hourly basis. *See 29 C.F.R. §§ 541.1(f), 541.2(e)(1), and 541.3(e)*. The regulations and applicable case law further delineate standards to be used for determining whether an employee indeed is paid on a salary basis. *See id.* § 541.118; *Abshire v. County of Kern, 908 F.2d 483 (9th Cir. 1990), cert. denied, 498 U.S. 1068, 112 L. Ed. 2d 848, 111 S. Ct. 785 (1991)*. [*6] Wertheim takes the position that DPS did not pay him and the other proposed class members on a salary basis.

Wertheim's claim that he and the proposed class members have not been paid on a salary basis rests in part on certain DPS policies. Wertheim has submitted evidence tending to establish that (1) all DPS employees must fill out reports that account for their time at work down to one-tenth of an hour; (2) that exempt employees receive "overtime" pay at their regular hourly rate or "comp" time on a one-for-one basis; (3) that employees must obtain permission before working overtime; and (4) that employees must use either accrued comp time or leave time to the extent they work less than forty hours per week. In a companion order issued this date, the court holds that these policies establish that DPS has not paid its exempt employees on a salary basis.

DPS's arguments as to why notice should not be authorized to the proposed class are not persuasive. DPS argues that the DPS orders which Wertheim relies upon have nothing to do with LEMSC, the administrative body which Wertheim claims wrongfully classified him and the other class members as exempt. This argument, however, misses [*7] the point. It simply is not relevant that the LEMSC does the classifying while DPS allegedly enacts and enforces policies that establish that the LEMSC's classifications are legally inaccurate.

DPS also argues that the DPS policies cannot serve as a sufficient basis for notice to issue because the policies are only guidelines. Wertheim has sufficiently rebutted this argument for class certification purposes by submitting a number of affidavits that allege that the pay policies generally are in effect throughout DPS. Furthermore, all DPS alleges is that the Guidelines are applied flexibly, not that they are not generally followed or that employees are not subject to the requirements of the Guidelines.

DPS further asserts that the proposed class is not similarly situated because individual supervisors within DPS allegedly control work requirements and adjust work schedules. This conclusory assertion is not suffi-

cient given that the question before the court is merely whether to authorize notice. Moreover, as Wertheim notes, his and the proposed class members' claims are strengthened to the extent that individual supervisors control work schedules and must authorize overtime pay. As [*8] discussed in the court's order of this date which rules on the parties' summary judgment motions, such control is not consistent with salaried status.

Finally, DPS's reliance on *Lusardi v. Xerox Corp., 122 F.R.D. 463 (D.N.J. 1988)* is misplaced. DPS relies on the following language from *Lusardi* for the proposition that the members of plaintiff's proposed class are not similarly situated:

> The members of the proposed class come from different departments, groups, organizations, suborganizations, units and local offices within the Xerox organization. The opt in plaintiffs perform different jobs at different geographical locations and were subject to different job actions concerning reductions in work force which occurred at various times as a result of various decisions by different supervisors made on a decentralized employee-by-employee basis.

*Id. at 465.* This language, when read in context, provides very little support for DPS. The *Lusardi* court, in an age discrimination case, decertified a class that already had received notice after it became apparent that case involved over 1300 employee firings that were conducted by individual [*9] supervisors on a "decentralized employee-by-employee basis." As discussed, Wertheim has provided evidence that he and the proposed class members all were incorrectly classified as exempt at the same time and for many of the same reasons. Thus, the court authorizes notice to the proposed class without yet commenting on the proper starting date for the class, a matter which is discussed *infra*.

## III. *THE PROPOSED SUB-CLASSES*

A. *The Proposed Sub-Class of All Civilian DPS Employees Who Allegedly Were Reclassified as Exempt in Response to Garcia*

Wertheim requests the court to authorize notice to a sub-class consisting of "all civilian DPS employees who have worked overtime hours since March 10, 1989 in job titles which the LEMSC reclassified as exempt in response to the *Garcia* decision." Wertheim alleges that the LEMSC changed "scores of job titles" from nonexempt to exempt status in response to *Garcia* in an at-

tempt to avoid having to pay nonexempt employees time-and-a-half for overtime work.

Wertheim has almost no evidence that the LEMSC's reclassification of job titles in 1985 was done on an improper basis. Instead, Wertheim argues that DPS has failed to produce [*10] information uniquely within its control which would explain the basis upon which the employees were reclassified. Wertheim also contends that in January of 1984 the LEMSC once used pay grade as the sole factor when determining when determining who was exempt for purposes of overtime pay. Under these circumstances, Wertheim argues that a reasonable inference is that the reclassifications after *Garcia* were done simply to avoid overtime pay.

At this time, the court will not authorize notice to what the parties refer to as the *Garcia* sub-class. Even if the LEMSC made the changes in an attempt to avoid liability for overtime pay, that does not necessarily establish that any particular employee was wrongfully classified. Improper basis, not improper intent, is the relevant standard and plaintiff has put forth no evidence of improper basis with respect to this sub-class that is not addressed by plaintiff's proposed class, which focuses upon the salary test, and plaintiff's duties-based sub-class.

B. *The Duties-Based Sub-Class*

Wertheim further requests the court to authorize notice to a duties-based sub-class of all exempt civilians who process evidence within DPS. This sub-class [*11] would include exempt LPEs, Criminalists, Laboratory Technicians, Questioned Document Analysts, Polygraph Examiners, and Criminal Intelligence Analysts.

An employee may be exempted under the FLSA if the employee's job duties are of such a nature as to implicate certain specific exemptions. In this case, Wertheim contends that all the members of this proposed sub-class analyze evidence for DPS by using techniques learned primarily on the job. Wertheim argues that similar considerations will guide the court when determining whether the duties these employees perform are of the type that implicate the FLSA exemptions which have been invoked by the defendant.

As evidence of the similarity between the various positions, Wertheim has submitted general job descriptions. In addition, Wertheim has submitted the affidavits of individuals who hold some of the positions within the proposed sub-class.

DPS argues that notice should not be authorized to this proposed sub-class because plaintiff has submitted insufficient evidence as to what the employees actually do on the job. The court disagrees. Again, the only issue before the court is whether notice should issue. The evi-

dence presented by [*12] Wertheim, and not controverted through evidence by DPS, establishes for present purposes that the members of the proposed sub-class are similarly situated.

## IV. THE CLASS PERIOD

### A. The Applicable Statute of Limitations

The FLSA statute of limitations is two years for an inadvertent violation and three years for a wilful violation. *See 29 U.S.C. § 255.* Under the FLSA, the limitations period is not tolled until an individual opts-in to the class. *Id. § 256.* Of all the papers submitted by the parties, only Wertheim's reply brief provides any significant discussion as to what the proper starting date of the class should be.

Wertheim argues that sufficient evidence exists that DPS's violation of the FLSA has been wilful for notice to issue to a class going back three years. A violation is wilful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S. Ct. 1677, 1681, 100 L. Ed. 2d 115 (1988).* As evidence of wilfulness, Wertheim first asserts that the State of Arizona certainly has been aware [*13] of the FLSA's standards since *Garcia.* Wertheim notes that in *Drollinger v. State of Arizona, 962 F.2d 956 (9th Cir. 1992),* the Ninth Circuit held that the State of Arizona had violated the FLSA by reducing the hourly rate of firefighters in response to *Garcia.*

Second, Wertheim has submitted the affidavit of Robert Tavernaro, an LPE, who asserts that when he asked about his right to time-and-a-half overtime pay he was told by his supervisors that he would lose his job if he further pursued the matter.

Third, Wertheim has submitted evidence tending to establish that in November of 1990 the Department of Labor alerted DPS to the overtime issue and that on February 20, 1991 the Department informed DPS that DPS was not in compliance with the FLSA. In addition, Wertheim has submitted an interoffice memorandum from a DPS staff attorney dated March 1, 1991, which states that DPS will have a difficult time meeting the requirements of the salary test. The memorandum recommended that DPS pay backpay to LPEs as suggested by the Department of Labor.

Fourth, Wertheim has submitted a DPS committee report dated March 19, 1991, which explained that DPS likely was not in [*14] full compliance with the FLSA and issued recommendations to bring DPS into compliance. According to Wertheim, DPS never took any action on these recommendations.

Finally, Wertheim argues that DPS expended little or no effort to ensure compliance with the FLSA before 1991. Wertheim contends that very little documentation can be found concerning compliance or even as to how classification decisions were made.

The court concludes that, for purposes of authorizing notice, Wertheim has put forth sufficient evidence of wilfulness to implicate the three-year limitations period within *28 U.S.C. § 255.*

### B. The Applicable Starting Date

The law is clear that the statute of limitations in FLSA cases does not stop running until an opt-in class member files his consent to opt in. Thus, even assuming a three-year limitations period, Wertheim's proposed starting date for the class, March 10, 1989, is well over one year too early. Wertheim argues that the court should apply the doctrine of equitable estoppel to permit class members to file suit for damages accruing after March 10, 1989, which was three years before the complaint was filed in this case.

The court is not [*15] persuaded to apply the doctrine of equitable estoppel in this case. Wertheim has cited no judicial decision in which a court discusses whether and how the doctrine applies in FLSA cases. The asserted grounds for Wertheim's invocation of the doctrine are that DPS allegedly threatened to fire Tavernaro if he asserted his rights under the FLSA, that delay occurred as a result of the Department of Labor investigation in 1991, and because DPS did not change its policies even after its own counsel suggested that it do so in 1991. This evidence, though sufficient to support an inference that DPS's alleged violation of the FLSA has been wilful, is not sufficient to require application of the doctrine of equitable estoppel.

Application of the doctrine of equitable estoppel requires proof that the defendant engaged in conduct with the intent of altering the plaintiff's conduct as well as proof that the plaintiff relied upon the defendant's conduct. *See Stallcop v. Kaiser Found. Hosp., 820 F.2d 1044, 1050 (9th Cir.), cert. denied, 484 U.S. 986 (1987); Operating Engineers Pension Trust v. Cecil Backhoe Serv., Inc., 795 F.2d 1501, 1507 (9th Cir. 1986).* [*16] With the possible exception of the allegation regarding Tavernaro, Wertheim's arguments do not allege misconduct on DPS's behalf designed to prevent class members from filing suit. Tavernaro's vague assertion, by itself, is not sufficient to toll the statute of limitations as it applies to all DPS employees for more than a year.

Thus, the starting date of the class should be September 28, 1990, which is three years prior to the date on which this order is signed.

## V. *THE FORM OF NOTICE*

Wertheim's renewed motion to authorize notice attaches as an exhibit a proposed form of notice with an accompanying sample consent form. DPS has filed objections to a number of portions of the proposed notice and consent forms. The court rules on DPS's objections as follows.

1. The date in the headnote should be changed to September 28, 1990.

2. The language in Paragraph A of the notice that reads "This is an official court Notice" should be changed to "This is a Notice. The words "advise you of how your rights may be affected by this lawsuit, and to" within Paragraph A should be deleted.

3. On page two, the words "classified as exempt" should be inserted on the second line of Paragraph [*17] 2(a) between the words "employees" and "at." The words "classified as exempt" also should be inserted in the first line of Paragraph 2(d) between the words "employees" and "in."

4. The date in Paragraph C on page two should be changed to September 28, 1990.

5. On page two, Paragraph D, the word "above" in the first line should be removed and in its place should be inserted "in Paragraph C".

6. On page three, the second sentence of the second paragraph--i.e., "To learn more about your rights . . . ."--should be deleted.

7. The blanks within Paragraph H on page four should be replaced by a date forty-five (45) days from the date this order was signed.

8. On page four, lines 17 and 19, the words "State" and "State's" should be deleted and replaced by the words "DPS" and "DPS's" respectively.

9. On page four, the last paragraph about contacting plaintiff's law firms for further information should be deleted.

10. On page five, Paragraph K should be amended to read: "The Fair Labor Standards Act prohibits anyone from discriminating or retaliating against you if you choose to take part in this lawsuit."

11. On the actual consent form submitted by Wertheim, the March 10, 1989 date [*18] in the last sentence of paragraph 2 should be deleted and replaced with the date of September 28, 1990.

## VI. *DPS' MOTION TO STRIKE CONSENTS ALREADY FILED*

The following assertions set forth in plaintiff's response to DPS' motion to strike do not appear to be controverted. In 1990, LPEs employed by DPS filed complaints with the Department of Labor regarding overtime pay. The Department then conducted an investigation and eventually recommended that DPS pay the LPEs their overtime pay. After a settlement could not be reached, the LPEs contacted the Associated Highway Patrolmen of Arizona (AHPA) for assistance, which then referred the LPEs to plaintiff's counsel.

After plaintiff's counsel could not reach a settlement with DPS on behalf of the LPEs, plaintiff Wertheim decided to bring his own action and filed this suit on March 10, 1992. The AHPA then sent a letter to AHPA members, informing them of the nature of Wertheim's action and providing them with a consent form to fill out and submit if they wished to join in Wertheim's suit. A number of AHPA members filled out the consent forms and sent them to plaintiff's counsel. Plaintiff's counsel then periodically filed opt-in [*19] lists with the court, listing the names and addresses of those who had submitted consent forms. These lists were served on defendants at the same time they were filed with the court.

After the court denied Wertheim's initial request to authorize notice on July 29, 1992, Wertheim submitted his renewed motion to authorize notice which this order addresses. In papers submitted on February 19, 1993 in conjunction with his renewed motion, Wertheim's counsel submitted the opt-in consent forms of twenty-nine of the employees listed on the previous opt-in lists.

DPS contends that all of the opt-in lists, as well as the opt-in forms filed by plaintiff's counsel in conjunction with plaintiff's renewed motion, should not be considered by the court because they allegedly are an inappropriate attempt to avoid the FLSA's statute of limitations. The FLSA provides some guidance as to the proper procedure for commencing an action under the Act. *See 29 U.S.C. § 256. Section 256* provides in relevant part:

> In determining when an action is commenced for the purposes of *section 255* of this title, an action . . . shall be considered to be commenced on the date when the [*20] complaint is filed; except that in the case of a collective or class action instituted under the [FLSA] . . . it shall be considered to be commenced in the case of any individual claimant--
>
> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed

on such date in the court in which the action is brought; or

(b) if such written consent was not so filed or if his name did not so appear--on the subsequent date on which such written consent is filed in the court in which the action was commenced.

DPS first argues that the lists and consent forms filed with the court include DPS employees who are outside of the LPE class allegedly established by the court. Given that the court now has authorized notice to a broader class, this argument fails in large part. However, to the extent that the lists and consent forms include employees who do not fall within the class and sub-class recognized by the court, their names must be stricken on that basis alone.

DPS next appears to argue that the consent forms and lists all should be struck because they were submitted before the [*21] court authorized notice to the proposed class and approved the form of notice submitted by plaintiff. *Section 256(b)*, however, requires only that a "written consent [be] filed in the court in which the action was commenced." There is no express statutory requirement that consents may only be filed after the court authorizes notice. Moreover, given that, as a general rule, the statute of limitations runs until a claimant files a consent form, and given that a court later can strike consents if a basis for doing so is established, the court is reluctant to conclude that *section 256(a)* per se forbids the filing of consents until after the court authorizes notice.

DPS also argues that the opt-in lists filed with the court are insufficient because they are not signed by the persons wishing to opt in. In addition, DPS contends that many of the consent forms received by plaintiff's counsel were not signed because, due to an alleged clerical error, the second page of the consent forms were not sent to many potential opt-in candidates. DPS asserts that the consent forms were inadequate because they were unsigned when submitted. Plaintiff responds that by reading the letter accompanying the [*22] consent forms, filling out the first page of the consent forms, and sending the forms to plaintiff's counsel, the opt-ins consented to join this suit.

With respect to DPS' claim that the lists filed by plaintiff are defective, the court notes that *section 256(b)*, does not require persons wishing to submit signed consent forms. At least one court has stated that *section 256(b)* is satisfied when a plaintiff files lists of persons wishing to opt in, instead of actual consent forms, after receiving consent forms from those wishing to opt in. See *Canfield v. United States, 14 Cl. Ct. 687,*

*688, 692 (Cl. Ct. 1988). But see Kulik v. Superior Pipe Specialties Co., 203 F. Supp. 938, 940-41 (N.D. Ill. 1962)* (holding that a typewritten list of names and without signatures was insufficient to constitute "written consent" to join the suit). The court also rejects DPS' arguments with respect to the fact that some of the consent forms were not signed. That the opt-in forms were filled out then sent to plaintiff's counsel clearly indicates consent by the opt-ins to join this lawsuit. The statute of limitations, therefore, was tolled when the opt-ins filed [*23] the unsigned consent forms.

DPS also argues that plaintiff Wertheim has not adequately included himself in this lawsuit for purposes of tolling the statute of limitations. According to DPS, Wertheim had to file a consent form with his complaint to properly include himself. Although this reasoning strikes the court as somewhat strange and unfair because defendants had notice, it is supported by the language of *section 256(a)*. *Section 256(a)* requires a party named in a complaint to also file a written consent before the statute of limitations ceases to run.

Plaintiff argues that he should be found to have included himself in this suit for statute of limitations purposes on the day he filed his complaint. He argues that the purpose underlying *section 256(a)*--to protect defendants and employees alike from suits brought by employee organizations, unnamed plaintiffs, or lists of named plaintiffs--does not apply in this case given that Wertheim was the sole plaintiff named in the complaint. In the alternative, plaintiff argues that the limitations period was tolled when he filed an affidavit on May 11, 1992, verifying the allegations in the complaint.

The court must reject plaintiff's [*24] contention that he is not required to submit a written consent pursuant to *section 256(a)*. Although Wertheim perhaps is correct that the purposes underlying *section 256(a)* are not implicated in this case, the language of that section is applicable and controlling. With respect to plaintiff's argument that the court should construe his affidavit submitted on May 11, 1992 as a written consent, DPS has not replied. The court, therefore, holds that the statute of limitations tolled with respect to plaintiff Wertheim on May 11, 1992.

In sum, the court holds that the statute of limitations was tolled (1) for plaintiff on May 11, 1992, and for claimants Tavernaro and Anderson on that same date because they filed affidavits verifying the allegations within the complaint, (2) for those individuals who fall within the class or sub-class recognized by the court in this order on the date that the individuals' names appeared on the various opt-in lists filed with the court, and (3) the limitations period is hereby held to have ceased running on February 19, 1993 for those individuals who

filed consent forms with the court on that date and who fall within the class or sub-class recognized by the [*25] court in this order.

IT IS ORDERED granting plaintiff's motion to authorize notice to potential class members and to approve of the notice and consent form submitted by plaintiff to the extent consistent with the terms of this letter (Doc. 38). Defendant is directed to provide plaintiff with the names and addresses of those individuals who fall within the class and sub-class recognized in this order as soon as is reasonably possible.

IT IS FURTHER ORDERED granting in part and denying in part consistent with the terms of this order defendant's motion to strike the allegedly improper consents to join this suit (Doc. 54).

DATED this *28th* day of September, 1993.

Robert C. Broomfield

United States District Judge

# EXHIBIT E

LEXSEE 2002 U.S. DIST. LEXIS 11810

**BONTEMPO vs. METRO NETWORKS et al**

**01 C 8969**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

*2002 U.S. Dist. LEXIS 11810; 146 Lab. Cas. (CCH) P34,550*

**May 02, 2002, Decided**

**DISPOSITION:**    [*1] Plaintiff's motion to begin opt-in notice to members of plaintiff class granted.

**COUNSEL:** For LINDA BONTEMPO, plaintiff: Douglas M. Werman, Law Office of Douglas M. Werman, Chicago, IL.

For METRO NETWORKS, WESTWOOD ONE INC, defendants: Jennifer M. McMahon, Meckler, Bulger & Tilson, Chicago, IL.

For SHADOW BROADCAST SERVICES, defendant: Paul R. Garry, Eileen Elizabeth Baker, Meckler, Bulger & Tilson, Chicago, IL.

**JUDGES:** James F. Holderman, JUDGE.

**OPINION BY:** James F. Holderman

**OPINION**

On March 28, 2002, plaintiff Linda Bontempo, on behalf of herself and all other plaintiffs similarly situated known and unknown, filed an amended complaint against defendants Westwood One Broadcasting Services, Inc., d/b/a Shadow Broadcast Services and Metro Networks Communications Limited Partnership, d/b/a Metro Networks and Shadow Broadcast Services. Before the court is plaintiff's motion to begin "opt-in" notice to members of the plaintiff class in this action pursuant to § 216(b) of the FLSA. For the following reasons, plaintiff's motion is granted.

The requirements for a class or collective action under the FLSA are governed by 29 U.S.C. § 216(b). Under § 216(b), class actions under the FLSA can only be maintained [*2] when and if potential claimants opt in. See 29 U.S.C. § 216(b); Vazquez v. Tri-State Management Co., 2002 U.S. Dist. LEXIS 385, Inc., 2002 WL 58718 at *2 (N.D.Ill. January 14, 2002); Allen v. Marshall Field & Co., 93 F.R.D. 438, 441 (N.D.Ill. 1982). In contrast, class actions under Rule 23 bind all members of the class unless they opt out and Rule 23's class certification requirements do not apply to FLSA class actions. King v. General Elec. Co., 960 F.2d 617, 621 (7th Cir. 1992). Rather, under the FLSA, the representative need only show that the plaintiffs are similarly situated. 29 U.S.C. § 216(b). The FLSA and its regulations, however, do not define similarly situated. One court defined similarly situated as "performing the same type of duties as" the named plaintiff. Pfahler v. Consultants for Architects, Inc. 2000 U.S. Dist. LEXIS 1772, 2000 WL 198888 at *2 (N.D.Ill. Feb. 8, 2000). Other courts have held that a named plaintiff can show that the potential claimants are similarly situated "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common [*3] policy or plan that violated the law." Vazquez v. Tri-State Management Co., Inc., 2002 U.S. Dist. LEXIS 385, 2002 WL 58718 at *2 (N.D.Ill. January 14, 2002); Realite v. Ark Rests. Corp., 7 F. Supp.2d 303, 306 (S.D.N.Y. 1998) (citations omitted). District courts have the discretionary power to authorize notice of the action to potential plaintiffs. Woods v. New York Life Ins. Co., 686 F.2d 578, 580 (7th Cir. 1982).

Defendants argue that plaintiff has failed to make a modest factual showing that an FLSA violation occurred and that similarly situated plaintiffs were victims of a common policy or plan that violated the law. Under the FLSA, employees who are "outside sales employees" are exempted from the FLSA overtime provisions. The regulations interpreting the FLSA define "outside salesman" as any employee "who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business" and who does not devote more than 20% of time to activities other than outside sales. 29 C.F.R. § 541.500. Plaintiff alleges that she was employed by defendants as an account executive

and her job [*4] responsibilities as an account executive were essentially those of an inside sales representative. Her principal duty was to sell radio advertisement air time to commercial customers. Plaintiff states in her declaration that the majority of her work time was spent making such sales and generating sales activities from her desk in defendants' Chicago office. Defendants contend that plaintiff has not established she was an inside sales person because plaintiff admitted she made sales calls outside the office and, according to plaintiff's supervisor, on-site meetings and presentations at a prospective customer's place of business are a key job requirement for account executives. Defendant also presents three of plaintiff's weekly sales reports indicating that plaintiff made certain sales calls outside of defendants' office during that time period. While making sales visits and calls outside the office may be an important job duty of an account executive, plaintiff need only make a modest factual showing that she was an inside sales representative for the purposes of the opt-in provision of the FLSA and this court finds that plaintiff in this case has satisfied this burden.

It is undisputed [*5] that defendants employ others with the job title "account executive" in its various office in the United States, including its Chicago office where plaintiff worked. It is further undisputed that it was not defendants' policy or practice to pay account executives overtime wages for the hours they work in excess of forty in individual work weeks; instead, defendants paid account executives on a draw against commission basis. Defendants allege that despite the identical job titles, plaintiff is not similarly situated to other account executives because other account executives did not share plaintiff's business practice of conducting sales predominantly as an inside sales representative. The "similarly situated" standard under § 216(b) is less stringent than the requirements under *Federal Rule of Civil Procedure*

23(b)(3). *Garza v. Chicago Transit Authority, 2001 U.S. Dist. LEXIS 6132, 2001 WL 503036* at *2 (N.D.Ill. May 8, 2001); see also King v. General Elec. Co., 960 F.2d 617, 619 (7th Cir. 1992)* (opt-in class action procedure preempts class-action procedure under *Federal Rule of Civil Procedure 23(a)*). Again, plaintiff need only make a modest factual showing sufficient to demonstrate [*6] that plaintiff and potential plaintiffs together were victims of a common policy or plan that allegedly violated the FLSA. This court finds that plaintiff has satisfied the lower threshold burden in this case to proceed with opt-in notice to potential class members.

Accordingly, plaintiff's motion to begin opt-in notice is granted. The proper class of plaintiffs is all employees who are or have been employed by defendants as an account executive within the prior three years from the date the employee files his or her Notice Of Consent To Become A Party Plaintiff form, whose job duties included selling radio air time to defendants' customers and who may have worked more than 40 hours in any one or more individual work weeks. Defendants are ordered to produce to plaintiff the names and home addresses of all potential class members by May 31, 2002. Defendants are ordered to refrain from any and all forms of communication with current and prospective class members concerning the merits and issues of their FLSA claims. Counsel are ordered to review the proposed Notice of Lawsuit and Notice of Consent form attached to this minute order and file any objections by May 14, 2002. This case [*7] is set for report on status and approval of Notice of Lawsuit and Notice of Consent form at 9:00 a.m. on May 16, 2002. Finally, this court urges the parties to discuss settlement.

DATED: 05-02-2002

JUDGE: HOLDERMAN

# EXHIBIT F



# Werman
LAW OFFICE P.C.

77 WEST WASHINGTON STREET | SUITE 1402
CHICAGO, ILLINOIS 60602

# Important: Court-Ordered Notice. Please read immediately.

# EXHIBIT G

Outten & Golden LLP
c/o Rosenthal & Company LLC
P.O. Box 6177
Novato, CA 94948-6177

Important: Court-Ordered Notice. Please read immediately.

VII.